IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EL SOBRANTE DEVELOPMENT, L.L.C, et al., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL ASSURANCE GROUP, INC., et al., <br><br> Defendants. | 1: 08-CV-455 AWI DLB <br><br> ORDER ON PLAINTIFFS' MOTION FOR APPROVAL OF GOOD FAITH SETTLEMENT <br><br> (Doc. Nos. 49, 50) |

Currently pending before this Court is Plaintiffs' motion for good faith settlement approval. No party has filed any opposition or response of any kind to Plaintiffs' motion. For the reasons that follow, the motion will be granted.

**BACKGROUND**

This case involves several real estate transactions around the city of El Sobrante, California. A foreclosure/trustee's sale was scheduled for the subject real estate (hereinafter "the Property") for April 4, 2008. See Court's Docket Doc. No. 51. The amount sought by the foreclosure sale was approximately $14.3 million. See id. Plaintiffs filed this suit on March 31, 2008, and alleged violations of state foreclosure laws, fraud, breach of contract, and RICO. Plaintiffs contend that the foreclosure and the amount sought in the foreclosure proceedings were wrongful, erroneous, fraudulent, and improper. See id. at Doc. No. 22 at ¶¶ 38, 39, 72-92.

There are multiple groups of defendants in this case.  Individual defendant Pamela Blair was dismissed under Rule of Civil Procedure 4(m) on September 22, 2009.  See id. at Doc. No. 57.  An entry of default was made on October 30, 2008, as to defendant Andrew Geiss.  See id. at Doc. No. 43.  On August 4, 2008, defendant JLS Investments, LLC was dismissed under Rule of Civil Procedure 41(a)(1).  See id. at Nos. 36, 39.  The "Oregon Defendants" (who consist of Integra Investments Co., Jack Louie, C.A. Winetrout III, and Pamela Winetrout) have been served, have not answered, but have been in active negotiations with Plaintiffs.  Based on declarations submitted by Plaintiffs' counsel, it appears that settlement between Plaintiffs and the Oregon Defendants is being finalized or is likely to occur.  See id. at Doc. Nos. 51, 55.  All remaining defendants are part of the "Winter Defendants."

The Winter Defendants loaned various sums of money to Plaintiffs throughout 2006 and attempted the trustee's sale in 2008.  See id. at Doc. No. 22 at ¶¶ 34-35.  Additionally, the Oregon Defendants allegedly agreed to loan Plaintiffs $810,000 in exchange for a deed of trust on a portion of the Property, but allegedly did not properly fund the loan.  See id. at ¶¶ 40-42.  The Oregon Defendants have liens on the Property that are junior to the Winter Defendants.  See id. at ¶¶ 34, 40; Doc. No. 51.

Plaintiffs and the Winter Defendants participated in mediation on November 17, 2008.  See id. at Doc. No. 52.  As a result of the mediation, a settlement was reached.  See id.  Plaintiffs' counsel describes the principal terms of the settlement as follows:

    a.    The Winter Defendants may proceed with their foreclosure proceedings and conduct the trustee's sale on the Property;

    b.    The Winter Defendants will take no action to sell the Property to third persons and will keep the Property for two years;

    c.    At any time before the end of the two-year period, Plaintiffs may have an option to purchase the Property at any time during these two years;

    d.    Should the Plaintiffs exercise their option in the first year following the foreclosure sale, the purchase price for the Property will be $5.5 million, but if the option was exercised after the first year the purchase price would be $6 million;

   e.  In exchange for the above option to purchase, Plaintiffs will dismiss this pending case.[1]

See id. at Nos. 51 at ¶ 10.  The description and relationship of items "a," "b," and "c" above are somewhat confusing.  A review of the settlement indicates that, once this Court determines that the settlement is made in good faith: (1) the Winter Defendants will conduct a trustee's sale and open the biding with a set-amount  "credit bid," (2) in the absence of a third party bid, the trustee will accept the credit bid, (3) the parties would then execute and record the above described option agreement,[2] and (4) the proceeds of the trustee's sale would be divided between Plaintiffs and the Winter Defendants pursuant to a particular ratio and California Civil Code § 29424k.  See Doc. No. 51 at Exhibit A at ¶¶ 24-26.

## PLAINTIFFS' MOTION

*Plaintiffs' Argument*

  Plaintiffs argue that the *Tech-Bilt* factors support a finding of good faith.  The settlement was the result of an informed, arms-length mediation with an independent mediator.  The parties have not colluded between themselves to injure any other defendants.  Although the Oregon Defendants hold junior liens on the property, their rights will not be harmed as they will be able to bid at the foreclosure sale.  The foreclosure sale will be permitted to go forward and the Plaintiffs will receive an option to buy the property back from the Winter Defendants for between $5.5 and $6 million.

*Defendants' Opposition*

  No oppositions or responses of any kind have been filed.  The Oregon Defendants were mailed notice and copies of Plaintiffs' motion on October 1, 2009, and Andrew Geiss was mailed notice of the motion on July 30, 2009.  See id. at Doc. No. 53, 58-60.

---

[1] The Court notes that Plaintiffs' counsel indicates that the dismissal will be "without prejudice."  See Court's Docket Doc. No. 51 at ¶ 10(e).  However, the settlement states that the dismissal will be "with prejudice."  See id. at Exhibit A ¶ 32.

[2] Plaintiffs have attached as Exhibit B to their counsel's declaration a signed option agreement.  Although acknowledged before a notary public, there is no indication that the option has been recorded.

*Legal Standard*

California Code of Civil Procedure § 877.6 "provides the framework under which a settlement in a multiparty litigation can be determined to be in good faith and the amount by which plaintiff's claim has been diminished can be precisely calculated." Dillingham Construction, N.A., Inc. v. Nadel Partnership, Inc., 64 Cal.App.4th 264, 278 (1998). Any party to an action involving two or more joint tortfeasors or co-obligors on a contract debt are entitled to a hearing on the good faith of a settlement between a plaintiff or other claimant and one or more of the joint tortfeasors or co-obligors after giving prescribed notice. See Cal. Code Civ. Pro. § 877.6(a)(1); KLS Air Express, Inc. v. Cheetah Transp. LLC, 2008 U.S. Dist. LEXIS 3039, 4-*5 (E.D. Cal. Jan. 15, 2008); Dillingham, 64 Cal.App.4th at 278. Alternatively, a party to such a settlement may give notice to all parties and the Court of the settlement together with an application for determination of good faith settlement and a proposed order. Cal. Code Civ. Pro. § 877.6(a)(2); KLS Air, 2008 U.S. Dist. LEXIS 3039 at *5; Wilshire Ins. Co. v. Tuff Boy Holding, 86 Cal.App.4th 627, 642 (2001). Under the alternate method, a non-settling party may, within 25 days of the mailing of the notice, file a motion contesting the good faith of the settlement. Cal. Code Civ. Pro. § 877.6(a)(2); KLS Air, 2008 U.S. Dist. LEXIS 3039 at *5; Wilshire Ins., 86 Cal.App.4th at 642. The party contesting good faith bears the burden of proof on the issue. Cal. Code Civ. Pro. § 877.6(d); KLS Air, 2008 U.S. Dist. LEXIS 3039 at *5; Dillingham, 64 Cal.App.4th at 278.

In assessing a request for a good faith settlement, a court should consider the following non-exclusive factors (the so called *Tech-Bilt* factors): (1) a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, (2) the amount paid in settlement, (3) the allocation of settlement proceeds among plaintiffs, (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial, (5) the financial conditions and insurance policy limits of settling defendants, and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. See Tech-Bilt, Inc. v. Woodward-Clyde & Associates, 38 Cal.3d 488, 499 (1985); TSI Seismic Tenant Space, Inc. v. Superior Court, 149 Cal.App.4th 159, 166 (2007). The settlement opponent must "demonstrate,

4

if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." Tech-Bilt, 38 Cal.3d at 499-500. "[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." Torres v. Union Pacific R.R. Co., 157 Cal.App.3d 499, 509 (1984). "Practical considerations" require that the evaluation "be made on the basis of the information available at the time of settlement." Tech-Bilt, 38 Cal.3d at 499.

*Discussion*

After review of the submissions of Plaintiffs, and in particular Paragraphs 22 through 32, the Court finds that the settlement is in good faith. It is clear that the settlement was negotiated at arms-length and was before a neutral magistrate. There is no evidence of collusion and the Court sees no harm in allowing senior lien holders to foreclose on the Property. Further, the junior lien holding Oregon Defendants will be permitted to bid at the foreclosure sale. See Court's Docket Doc. No. 51 at ¶ 12. Plaintiffs will receive, at a minimum, $500,000 of the "credit bid." See id. at Exhibit A at ¶ 25. Plaintiffs will also receive an option to repurchase the Property from the Winter Defendants if the credit bid is accepted. Id. at ¶ 26. This settlement will dispose of the Property and allow the foreclosure proceedings to move forward, and it is the Property and foreclosure sale that form the basis of this lawsuit. Further, although there are numerous defendants identified in the active complaint, the specific allegations under the cause of actions relate almost exclusively to the Winter Defendants. See id. at Doc. No. 22. It therefore appears that many of the claims will be extinguished by the settlement with the Winter Defendants. Neither the Oregon Defendants nor Geiss has shown a lack of good faith. See Cal. Code Civ. Pro. § 877.6(d); KLS Air, 2008 U.S. Dist. LEXIS 3039 at *5; Tech-Bilt, 38 Cal.3d at 499-500; Dillingham, 64 Cal.App.4th at 278. In the absence of oppositions or responses by the Oregon Defendants and Andrew Geiss, the Court is satisfied that the settlement between the Plaintiffs and the Winter Defendants is a "good faith settlement." Cal. Code Civ. Pro. § 877.6; Northern Cal. River Watch v. Ultramar, Inc., 2005 U.S. Dist. LEXIS 1229 (N.D. Cal. Jan. 20, 2005); Tech-Bilt, 38 Cal.3d at 499-501.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for approval of good faith settlement is GRANTED;
2. Plaintiffs shall file a notice of dismissal as to the Winter Defendants within ten (10) days of service of this order; and
3. The Plaintiffs will submit a status report to the Court regarding the remaining defendants, including Defendant Andrew Geiss, and Plaintiffs intentions for going forward in this case within twenty (20) days of service of this order.

IT IS SO ORDERED.

**Dated:   October 28, 2009**          /s/ Anthony W. Ishii
                           CHIEF UNITED STATES DISTRICT JUDGE